UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FRANCISCO JAVIER OLVERA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:10-cv-2127 |
| | § | |
| SERGEANT JUSTIN ALDERETE, | § | |
| POLICE CHIEF JOHN TOLLETT, and | § | |
| THE CITY OF SEALY, TEXAS, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' Motion to Dismiss (Doc. No. 5). After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that Defendants' motion to dismiss should be granted in part and denied in part without prejudice.

## I.    BACKGROUND

This lawsuit arises from the arrest of Francisco Javier Olvera ("Plaintiff" or "Olvera"), a resident of the City of Sealy, Texas, on October 29, 2009.[1] On that day, Olvera was engaged in some work on the fenced patio adjacent to his house. (Complt. ¶ 7.) Mr. Olvera used his computer speakers, located in the bedroom of his house, to play music that was audible while he worked on the patio. (*Id.* ¶ 8.) Mr. Olvera left home at least once during the day to go to the hardware store for supplies and to the bank. (*Id.* ¶ 9.) After he returned home, he continued work on his patio.

---

[1] In considering the Rule 12(b)(6) motion to dismiss, the Court accepts the factual allegations in Plaintiff's complaint as true. *Frame v. City of Arlington*, 575 F.3d 432, 433-34 (5th Cir. 2009). Thus, the Court pulls relevant facts from Plaintiff's Original Complaint ("Complt.") (Doc. No. 1).

While on his patio, Mr. Olvera was approached by Sergeant Justin Alderete ("Defendant Alderete" or "Alderete"). (*Id.* ¶ 10.) Defendant Alderete told Mr. Olvera that he was responding to a noise complaint and asked for Mr. Olvera's identification. (*Id.* ¶¶ 10, 12.) Mr. Olvera's wallet was located inside his home, approximately five feet away from where Mr. Olvera and Defendant Alderete were standing on the patio. (*Id.* ¶ 13.) Olvera went inside his home to collect his identification from his wallet, which was lying on the kitchen counter just inside the patio door. (*Id.* ¶¶ 13, 14.) Defendant Alderete followed Olvera inside his home, though Olvera did not provide him with permission to do so. (*Id.*) Olvera photographed Defendant Alderete standing inside his home since Olvera believed that Alderete did not have the authority to enter his residence. (*Id.* ¶ 15.) Defendant Alderete allegedly told Olvera that he believed Olvera's conduct constituted "illegal photography." (*Id.* ¶ 16.) Alderete observed a can of beer on Olvera's kitchen counter and arrested Olvera, handcuffing him and putting him in the police car. (*Id.* ¶¶ 17, 18.)

Olvera alleges that other people took pictures of these events. (*Id.* ¶ 19.) Olvera also alleges that Alderete stated that he was also photographing and videotaping the events. (*Id.*) When Olvera and Alderete arrived at the City of Sealy police station, Alderete allegedly remarked, "Do you know what I tell Mexicans when they get loud? . . . No chinges con migo pinche culero . . . Don't be f*****g with me." (*Id.* ¶ 21.)

Olvera was subsequently charged with public intoxication and loud music offenses. Olvera was acquitted of these charges after a jury trial on January 10, 2010. He subsequently filed the instant lawsuit, alleging that Alderete, Police Chief John Tollett, and the City of Sealy violated 42 U.S.C. § 1983 by depriving Olvera of his constitutional rights against unlawful search and seizure, unlawful arrest and imprisonment, and malicious prosecution, and committed

various state law torts. Defendants now move to dismiss Olvera's complaint on the ground that it fails to state a claim upon which relief can be granted.

## II.   LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S. Ct. at 1950 (citation omitted). The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal

conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)). A district court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). Furthermore, a Court may refer to matters of public record when deciding a motion to dismiss. *Chauhan v. Formosa Plastics Corp.*, 212 F.3d 595, 595 (5th Cir. 2000). Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted); *Duke Energy Intern., L.L.C. v. Napoli*, Case No. H-09-2408, --- F. Supp. 2d ----, 2010 WL 3749298 (S.D. Tex. Sept. 21, 2010).

Additionally, "when a plaintiff sues a public official under [Section] 1983, the district court must insist on heightened pleading by the plaintiff." *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996) (citing *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995)).  In such cases, the pleadings "must 'state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity.'" *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (quoting *Elliott v. Perez*, 751 F.2d 1472, 1473 (5th Cir. 1985)).

## III.    ANALYSIS

### A.  Section 1983 Claims

Section 1983 provides injured plaintiffs with a cause of action when they have been deprived of federal rights under color of state law. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). The statute reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. In order to state a cause of action under § 1983, a plaintiff must (1) allege a violation of rights secured by the constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person [or entity] acting under color of state law. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d at 215.

Defendants first argue that Olvera has not sufficiently alleged facts that demonstrate a violation of constitutional rights occurred. Second, Defendants argue that Olvera has not met the heightened pleading standard necessary to defeat Defendants Alderete's and Tollett's qualified immunity. Finally, Defendants argue that the facts contained in Olvera's complaint do not give rise to Defendant Tollett's supervisory liability or the City of Sealy's municipal liability. The Court takes up each of Defendants' arguments in turn.

### 1. "Unlawful Search and Seizure" Claim

In his complaint, Olvera claims that Defendants violated his constitutional rights against "unlawful search" when Defendant Alderete unlawfully, and without Olvera's consent, entered and searched Olvera's residence. In addition, Olvera's complaint appears to challenge Defendant Alderete's arrest of him as violative of his constitutional right against unlawful seizure or unlawful arrest. Olvera's complaint does not specify whether he alleges these actions violate the rights guaranteed by the Fourth Amendment or rights vested by some other federal constitutional

or statutory provision. Defendants contend that no "search" under the Fourth Amendment occurred when Defendant Alderete entered Mr. Olvera's home. Alternatively, Defendants argue that any search that may have happened was not unreasonable because it occurred incident to Mr. Olvera's arrest for noise violation and public intoxication. As to Olvera's arrest, Defendants argue that the arrest was supported by probable cause and consequently lawful. The Court will address Olvera's claims of unlawful search and unlawful seizure separately below.

### a. Unlawful Search

The Fifth Circuit has established a two-step analysis for determining whether governmental intrusion violates the Fourth Amendment. First, a court must determine whether the governmental activity intrudes upon a reasonable expectation of privacy in such a significant way as to constitute a "search." *United States v. York*, 895 F.2d 1026, 1028 (5th Cir. 1990). Second, if the court determines that a "search" has occurred, the court must decide whether the governmental activity was unreasonable given the particular facts of the case. *Id.*

With respect to the first step of the inquiry, the Fourth Amendment does not bar all searches of private property, but only protects those areas in which citizens have a "reasonable expectation of privacy." *United States v. McKeever*, 5 F.3d 863, 866 (5th Cir. 1993) (citing *Katz v. United States*, 389 U.S. 347 (1967)). In addition, "[a] subjective expectation of privacy does not, by itself, give rise to Fourth Amendment protection[;]" rather, "the expectation of privacy must be one that society is prepared to recognize as reasonable." *United States v. Paige*, 136 F.3d 1012, 1018 (5th Cir. 1998) (quoting *United States v. Smith*, 978 F.2d 171, 177 (5th Cir. 1992)). Not only is the right to privacy in the home generally considered to be a reasonable expectation, *York*, 895 F.2d at 1029, but the Fifth Circuit has also recognized that occupants possess a "heightened interest of privacy associated with being free from intrusion in [their] home."

*Fontenot v. Cormier*, 56 F.3d 669, 674 (5th Cir. 1995). However, occupants may lose their expectation of privacy in their home under certain circumstances, including in those portions of the home (and the activities taking place therein) that can be observed from outside the premises through windows, and activities that create a reasonably foreseeable risk of intrusion. *York*, 895 F.2d at 1029; *see also Paige*, 136 F.3d at 1018-19.

After establishing that governmental intrusion constitutes a search, a court must turn to the second step of the inquiry—whether the search was unreasonable. Warrantless searches and seizures inside someone's home are presumptively unreasonable unless the occupants consent or exigent circumstances exist to justify the intrusion. *Payton v. New York*, 445 U.S. 573, 586, 590 (1980); *United States v. Richard*, 994 F.2d 244, 247 (5th Cir. 1993). Thus, if agents have no warrant and no consent, even if they have probable cause and statutory authority to arrest a suspect, they must also have exigent circumstances to enter. *Arizona v. Hicks*, 480 U.S. 321, 327-28 (1987) ("A dwelling-place search, no less than a dwelling-place seizure, requires probable cause . . . ."). "The exigent-circumstances exception applies where the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate." *United States v. Menchaca-Castruita*, 587 F.3d 283, 289 (5th Cir. 2009). The government bears the burden of proving the existence of exigent circumstances. *Id.*

Here, of course, it is not the task of the Court to decide whether Defendant Alderete's entry into Olvera's home constituted an unreasonable search, but instead to asses only whether Olvera has adequately pled an unconstitutional search claim. The Court finds that Olvera has adequately pled his claim.  First, Olvera has pled sufficient facts to allege that Defendant Alderete's actions constituted a "search." Olvera states that Defendant Alderete "followed"

Olvera into his residence. (Complt. ¶ 14.) Olvera possessed a reasonable expectation of privacy in his home. His expectation of privacy was not diminished by either leaving portions of his home observable from outside the premises, or by engaging in activities that would create a reasonably foreseeable risk of intrusion. *York*, 895 F.2d at 1029. Defendants cite *York* for the proposition that a police officer who remains in the threshold of an individual's apartment is not a "search" for Fourth Amendment purposes. However, *York* did not attempt to demarcate the bounds of a home where a police officer may permissibly roam while still remaining on the right side of the Fourth Amendment. Rather, *York* rested on the recognition that "activities or circumstances within a dwelling may lessen the owner's reasonable expectation of privacy by creating a risk of intrusion which is 'reasonably foreseeable.'" *Id.* In *York*, the defendant had invited another man and his children to live inside his home. When the defendant later became drunk and belligerent, the man enlisted the aid of the police to remove his belongings from the defendant's home. The Fifth Circuit grounded its holding that such governmental intrusion into the defendant's home was "reasonably foreseeable" due to the defendant's permission for the man and his children to reside in his home. Such permission "necessarily invited all the normal incidents of joint occupancy." *Id.* at 1030. The defendant in *York* should have expected that, when he became drunk and belligerent, his co-occupant might ask police officers to make a limited entry into the house to keep the peace. The Fifth Circuit noted that, had the co-occupant lacked the authority to be inside the defendant's home, the defendant's behavior "probably would not have authorized the deputies to step inside York's home." *Id.* at 1029. Here, there is no indication that Olvera's behavior, while disruptive to his neighbors, gave rise to a diminished expectation of privacy *inside* of his home. At most, Olvera could have reasonably expected that a police officer might arrive at his home to inquire about the music. However, Olvera's actions, as

adduced in his complaint, do not suggest that he engaged in activities inside the house that would render Defendant Alderete's entry into Olvera's kitchen reasonably foreseeable.

Next, Olvera has pled sufficient facts to allege that the search of his home by Defendant Alderete was unreasonable. Olvera has stated that the search was of his home. (Complt. ¶ 14.) As such, the search was presumptively unreasonable unless Olvera gave consent or exigent circumstances existed. Olvera's complaint states that he did not give consent for Defendant Alderete to enter his home. (*Id.* ¶¶ 14, 15.) In addition, no exigent circumstances appear on the face of Olvera's complaint to justify Defendant Alderete's entrance into Olvera's home.

Finally, Defendants claim that they should be excused from the warrant requirement of the Fourth Amendment due to the search incident to arrest exception. "It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." *United States v. Robinson*, 414 U.S. 218, 224 (1973). Under this exception, a police officer may search the person of the arrestee and may search the area within the control of the arrestee. *Id.*; *see also United States v. Johnson*, 846 F.2d 279, 281 (5th Cir. 1988). However, as discussed below, Olvera has adequately stated a claim that Defendant Alderete's arrest was invalid. Therefore, at this stage of the case, the search incident to arrest exception to the search warrant requirement cannot foreclose Olvera's claims since this exception depends on the existence of a lawful arrest. *United States v. Hernandez*, 825 F.2d 846, 852 (5th Cir. 1987).

Viewing these facts in the light most favorable to Olvera, the Court concludes that he has stated a Fourth Amendment unlawful search claim under Rule 12(b)(6). However, Olvera must amend his complaint to clearly state the federal constitutional or statutory provision that he believes the unlawful search to have violated.[2]

---

[2] "'[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable

### b. Unlawful Seizure

The Constitution permits a warrantless arrest of an individual in a public place if there is probable cause to believe that the suspect has committed or is committing an offense. *United States v. Santana*, 427 U.S. 38, 42 (1976); *Adams v. Williams*, 407 U.S. 143, 148-149 (1972); *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999) (en banc). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *Id.* "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).

However, the Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest" unless exigent circumstances exist. *Payton v. New York*, 445 U.S. 573, 576 (1980); *Kirk v. Louisiana*, 536 U.S. 635, 638 (U.S. 2002) (per curiam) ("[P]olice officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home."); *United States v. Hicks*, 389 F.3d 514, 526 (5th Cir. 2004). Exigent circumstances may not excuse warrantless arrests of individuals suspected of minor offenses. In cases involving "minor offense[s]," the presumption of unreasonableness in a warrantless arrest in an individual's home will be "difficult to rebut." *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984) ("[I]t is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the

---

to amend in a manner that will avoid dismissal.'" *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). In its discretion, the Court finds it appropriate to allow Olvera both to amend his original pleadings to meet the *Iqbal* and *Twombly* standard, and file a Rule 7(a) reply to respond to the individual Defendants' qualified immunity defense, as discussed further *infra* Part III.A.4.

underlying offense is extremely minor."); *Augustine v. Doe*, 740 F.2d 322, 325 (5th Cir. 1984) (recognizing the Supreme Court's holding in *Welsh* as prohibiting the warrantless, nonconsensual entry into a home to effectuate an arrest for a nonjailable offense). However, the "expectation of privacy recognized in *Payton* does not exist when a *felony* suspect stands at the open door of his residence or is otherwise accessible to the public." *Fontenot v. Cormier*, 56 F.3d 669, 674 (5th Cir. 1995) (emphasis added); *see also United States v. Santana*, 427 U.S. 38, 42 (1976) (holding that an individual standing in the doorway of a house is in a "public place" and "hence subject to arrest without warrant permitting entry of the home").

Olvera has adequately pled a claim for unlawful seizure under the Fourth Amendment. In his complaint, Olvera alleges that he was in his home at the time Defendant Alderete first arrived. (Complt. ¶ 10.) Specifically, Olvera states that he was in his "fenced patio." (*Id.* ¶¶ 7, 10.) Though Olvera does not clearly note that Defendant Alderete lacked an arrest warrant, he does state that he did not believe Alderete possessed the authority to enter his home. (*Id.* ¶ 15.) Olvera does allege that he did not provide consent to Defendant Alderete to enter his home. (*Id.* ¶ 14.) The offenses for which Olvera was arrested are minor. The first offense, violation of City of Sealy municipal ordinances § 42-115(a) and § 42-116, carries with it a maximum punishment of a fine up to $2,000. Sealy Ord. §§ 1-7, 42-119. The second offense, violation of Texas Penal Code § 49.02, public intoxication, is a Class C misdemeanor and subject to a maximum punishment of a fine not to exceed $500. Tex. Penal Code §§ 12.23, 49.02(c). These facts give rise to a plausible claim that Defendant Alderete committed an unlawful warrantless arrest of Olvera in his home, without consent and without exigent circumstances considering the minor nature of Olvera's offenses.

The Court concludes that Olvera has stated a Fourth Amendment unlawful seizure claim under Rule 12(b)(6). However, Olvera must amend his complaint to clearly state the federal constitutional or statutory provision that he believes the unlawful seizure to have violated, and to specifically state whether Defendant Alderete possessed an arrest warrant.

### 2.   "Unlawful Arrest and Imprisonment" Claim

In the introduction to his complaint, Olvera asserts a claim of "unlawful arrest and imprisonment" against Defendants. He appears to expand on this claim when he later states in the Complaint that the Defendants violated § 1983 by "taking [him] into custody and holding him there against his will, without due process of law." (Complt. ¶ 24(b).) Olvera does not identify which provision of the federal constitution or federal statute these actions have violated. Because the phrase "due process of law" was used, the Court can only assume that Olvera claims that Defendants' actions violated the Due Process Clause of the Fourteenth Amendment. Even assuming that Olvera claims a violation of the Due Process Clause, it is unclear whether the violation is founded upon substantive due process or procedural due process. Defendants argue that any and all of Olvera's claims under the Fourteenth Amendment must be analyzed under the more specific provisions of the Fourth Amendment.

It is true that, in the context of alleged deprivations of certain constitutional rights, the deprivation must be analyzed under a specific constitutional amendment rather than the general due process principles of the Fourteenth Amendment. For example, in *Graham v. Connor*, the Supreme Court held that claims of excessive force in the context of an arrest or investigatory stop must be analyzed under the Fourth Amendment's "reasonableness standard" rather than the "generalized" notion of substantive due process because the Fourth Amendment "provides an explicit textual source of constitutional protection against this sort of physically intrusive

government conduct." 490 U.S. 386, 394-95 (1989).[3] The Fifth Circuit, extending the logic of *Graham*, has held that a claim for illegal arrest based on mistaken identity must also be analyzed under the Fourth Amendment rather than the Fourteenth Amendment. *Blackwell v. Barton*, 34 F.3d 298 (5th Cir. 1994). However, the Fourth Amendment does not extend to protect individuals from deprivations of liberty that continue past their arrest. Rather, "[t]he Fourth Amendment is inapplicable to a pretrial detainee who was properly arrested and is awaiting trial." *Brooks v. George County*, 84 F.3d 157, 167 (5th Cir. 1997), *cert. denied*, 519 U.S. 948 (1997). Such an individual "has recourse to due process protections, not protection against unreasonable seizures after a lawful seizure has occurred." *Id.* Therefore, the Fourteenth Amendment is an appropriate constitutional provision for analyzing challenges to continued imprisonment after a valid arrest has occurred. *See also Jones v. City of Jackson*, 203 F.3d 875, 880-81 (5th Cir. 2000) (affirming the lower court's denial of qualified immunity as to plaintiff's Fourteenth Amendment claims where a plaintiff, who had been unlawfully held for nine months after arrest on a facially valid bench warrant, challenged his detention on due process grounds).

Olvera's complaint suggests, but does not state with clarity, that he challenges his post-arrest detention as a violation of his constitutional rights that is distinct from any violation that may have occurred during the events leading up to and including his arrest. The Fourth Amendment properly governs the latter claim, "when the complaint contests the method or basis of the arrest and seizure of a person." *Brooks*, 84 F.3d at 167. The former claim, the challenge to continued detention after arrest, can be analyzed under the Fourteenth Amendment's due process protections. Olvera's Fourteenth Amendment claim does not fail as a matter of law, but his

---

[3] The Supreme Court has not addressed whether claims brought pursuant to the Fourteenth Amendment's guarantee of procedural due process must be analyzed under the Fourth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) (noting that petitioner had not brought a claim of a procedural due process violation, but that his substantive due process claim should be analyzed under the Fourth Amendment).

complaint suffers from serious factual deficiencies. Olvera has not identified the facts identifying the unlawful nature of his post-arrest detention, and, in fact, states that he "bonded out of jail." (Complt. ¶ 23.)

The Court grants Olvera leave to amend his complaint in order to clearly identify the federal constitutional or federal statutory provision that he believes the unlawful arrest and imprisonment to have violated. To the extent that Olvera maintains that the Due Process Clause of the Fourteenth Amendment has been violated, Olvera must also state whether his right to substantive due process and/or his right to procedural due process has been violated. In addition, Olvera must include facts about his imprisonment that sufficiently and plausibly allege its unlawful nature.

### 3. Malicious Prosecution

Olvera alleges in his complaint that Defendants violated his constitutional right against malicious prosecution by alleging, filing, asserting and prosecuting criminal charges without probable cause or sufficient evidence. Defendants respond that Olvera has no constitutional right to be free from malicious prosecution, and thus, his claim of a § 1983 violation must fail for lack of a constitutional right to be vindicated through § 1983.

The Fifth Circuit has held that "no freestanding constitutional right to be free from malicious prosecution exists." *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003). Like all claims brought under § 1983, a claim for malicious prosecution must be grounded in a specific federal right guaranteed by the constitution or statute. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). The Fourth Amendment provides redress for violations of constitutional rights committed solely during "the pretrial events of a prosecution," including arrest, while the

Fourteenth Amendment remains available as a source of protection for violations of due process rights committed during trial. *Castellano*, 352 F.3d at 958-59.

Here, Olvera has not identified the specific constitutional right that the alleged malicious prosecution has infringed. To the extent that Olvera brings a claim under the Fourteenth Amendment, he has not provided sufficient factual allegations of the actions taken to deprive him of his due process rights during trial. He only states that, "[o]n January 10, 2010, after a jury trial, Olvera was acquitted on all charges." This statement provides no information as to the allegedly wrongful behavior that constitutes "malicious prosecution."

The Court will grant Olvera leave to amend his complaint in order to clearly identify the federal constitutional or statutory provision that he believes his prosecution without probable cause to have violated. To the extent that Olvera maintains that the Due Process Clause of the Fourteenth Amendment has been violated, Olvera must also state whether his right to substantive due process and/or his right to procedural due process has been violated. In addition, Olvera must include facts about the wrongful actions taken prior to and/or during his trial that constitute the unconstitutional conduct of which he complains.

### 4. Qualified Immunity

Defendants argue next that Olvera fails to allege facts which overcome the individual Defendants' qualified immunity for three reasons. First, Defendants contend that Olvera does not show that Defendants Alderete and Tollett deprived him of a clearly established right of which a reasonable official would have known. Second, Defendants contend that Olvera has not demonstrated that his own conduct was clearly lawful. Finally, Defendants claim that Olvera does not allege that Defendant Alderete's and Tollett's conduct was objectively unreasonable in light of the clearly established law at the time of the alleged constitutional violation.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *DePree v. Saunders*, 588 F.3d 282, 287 (5th Cir. 2009) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). In examining whether an official is entitled to qualified immunity, a court "conduct[s] the two-step analysis" outlined in *Saucier v. Katz. Lytle v. Bexar County*, 560 F.3d 404, 409 (5th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). *Saucier* maintained a "rigid 'order of battle,'" *id.* at 409, whereby qualified immunity was to be determined by examining first, whether the facts alleged show that an official violated a constitutional right, and second, whether that constitutional right was clearly established at the time of the violation. 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009).[4] After the Supreme Court's decision in *Pearson v. Callahan*, a court need not address these two questions in that particular order. 129 S. Ct. at 818.

When a defendant properly asserts a defense of qualified immunity, the burden falls to the plaintiff to "'demonstrate the inapplicability of the defense.'" *Atteberry v. Nocona Gen.*

---

[4] Defendants also claim that, in order to overcome the defense of qualified immunity, a plaintiff must demonstrate that his acts were clearly lawful. (Def.'s Mtn. to Dismiss at ¶ 60.) However, Defendants have misread the case they cite, *Sorenson v. Ferrie*, 134 F.3d 325 (5th Cir. 1998), in order to add an unnecessary third prong to the plaintiff's burden when confronted with a defense of qualified immunity. *Sorenson* affirmed the principle that claims of qualified immunity are reviewed under a *two-step* analysis: first, whether the plaintiff has asserted a violation of a clearly-established constitutional right, and, second, whether the defendant's conduct was objectively reasonable. *Id.* at 327. In *Sorenson*, the plaintiff contended that the constitutional right that had been violated was her "right to be free from illegal arrest." *Id.* at 328. In order to determine whether plaintiff's right to be free from unlawful arrest was violated, the court was required to review whether plaintiff's behavior at the time of her arrest was clearly lawful. *Id.* Thus, the inquiry into the lawfulness of plaintiff's conduct was part of the court's first step of the qualified immunity analysis, rather than a separate burden imposed on the plaintiff. Here, it is unclear whether Olvera believes his arrest for loud noise and public intoxication to be unlawful on the grounds that probable cause did not support an arrest for those offenses. (Complt. ¶¶ 8, 17.) To the extent that Olvera raises a claim on this theory, the Court grants leave for him to amend his complaint and add particularized facts that would show that his conduct at the time of his arrest was clearly lawful.

*Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005) (quoting *McClenson v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam)). A plaintiff is not required to anticipate the defense of qualified immunity and "'provide greater specificity'" in a complaint. *Ellis v. Crawford*, 2005 WL 525406, at *4 (N.D. Tex. Mar. 3, 2005) (quoting *Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1995) (per curiam)).   Instead, a plaintiff is obligated to file initially a "'short and plain statement'" of the claim pursuant to Rule 8(a)(2). *Id.* After a defendant answers with a qualified immunity defense, a court "may, in its discretion, insist that a plaintiff file a reply" pursuant to Rule 7(a) that addresses the qualified immunity question. *Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995).  This reply "must be tailored to the assertion of qualified immunity and fairly engage its allegations." *Id.* at 1433.  A defense pleaded with particularity, then, will require particularity from the plaintiff's Rule 7(a) reply. *Id.*

In this case, the Court has not requested a Rule 7(a) reply from Olvera.  If Plaintiff fails to allege facts which overcome qualified immunity, this Court will allow him to amend his complaint to cure those deficiencies.

The Court's first task is to determine whether Plaintiff has alleged the violation of a constitutional right.  Olvera alleges that Defendants, through Defendant Alderete's search of his home and arrest, violated his constitutional rights against unlawful search and seizure, his due process rights against unlawful arrest and imprisonment, and his right against malicious prosecution. For the reasons stated in Parts III.A.2 and III.A.3, *supra*, the Court has concluded that Olvera has failed to state a claim for unlawful arrest and imprisonment and for malicious prosecution. The Court need go no further with respect to these claims, and grants Olvera leave to amend his complaint and allege adequate facts that would overcome Defendant Alderete's and Defendant Tollett's defense of qualified immunity. As for Olvera's claim of unlawful search and

seizure, the Court has concluded that Olvera has adequately alleged a violation of his Fourth Amendment rights. *See* Part III.A.1, *supra*.

Next, the Court must consider whether the violation of Olvera's Fourth Amendment right against unlawful search and seizure was objectively unreasonable given the clearly established law at the time of his arrest. As the Supreme Court has stated, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*." *Saucier*, 533 U.S. at 202 (emphasis added). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "When conducting this inquiry, '[t]he central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Lytle v. Bexar County Tex.*, 560 F.3d 404, 417 (5th Cir. 2009) (quoting *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc)). When qualified immunity is raised in a motion to dismiss, it is the defendant's conduct as outlined in the pleadings that is examined for objective reasonableness. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

In 2009, when Defendant Alderete encountered Olvera at his home, it was clearly established that an individual had a reasonable expectation of privacy in their home and that a warrantless search of a home was presumptively unreasonable absent consent or exigent circumstances. *See Arizona v. Hicks*, 480 U.S. 321; *Menchaca-Castruita*, 587 F.3d at 289; *Fontenot*, 56 F.3d at 674; *Richard*, 994 F.2d 244; *York*, 895 F.2d at 1029. Further, it was clearly established at the time of Olvera's arrest that an arrest of individual at his home constituted an

exception to the rule that a police officer may perform a warrantless arrest of individual in a public place. *See Kirk*, 536 U.S. at 638; *Payton*, 445 U.S. at 576; *United States v. Hicks*, 389 F.3d at 526. As early as 1984, the Fifth Circuit had recognized that, "in the absence of exigent circumstances, the police may not enter a house without a warrant or consent to make an arrest for a nonjailable offense." *Augustine*, 740 F.2d at 325 (citing *Welsh*, 466 U.S. at 750).

Defendants advance two relevant theories suggesting that Defendant Alderete's behavior was reasonable in light of the clearly established law at the time of search of Olvera's home and Olvera's arrest. First, Defendants argue that the search of Olvera's home was incident to a lawful arrest, and therefore Defendant Alderete's conduct was reasonable given the long-standing legal rule that police officers may conduct searches incident to lawful arrests. *See United States v. Robinson*, 414 U.S. 218 (1973). In order for the search incident to arrest doctrine to apply, the arrest itself must be lawful. *United States v. Hernandez*, 825 F.2d 846, 852 (5th Cir. 1987). Second, Defendants contend that Defendant Alderete's arrival at Olvera's home was appropriate given the Fifth Circuit's recognition that "knock and talk" procedure is a "reasonable investigative tool . . . to gain an occupant's consent to search or when officers reasonably suspect criminal activity." *United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001).

Accepting the complaint's well-pleaded facts as true and viewing them in the light most favorable to Olvera, Defendants still have raised significant questions as to the reasonableness of Defendant Alderete's actions at Olvera's home given the interplay between the clearly established law regarding warrant requirements for search and seizures in the home, on the one hand, and the case law establishing the reasonableness of searches incident to arrest and the "knock and talk" procedure, on the other. Although Olvera has stated a claim for a violation of his constitutional rights against unlawful search and seizure, Defendants have outlined a serious

defense of qualified immunity characterizing Defendant Alderete's actions, even though they may have violated Olvera's constitutional rights, as not objectively unreasonable given the clearly established law at the time of his arrest.

The Court will allow Olvera the opportunity to tailor his pleadings to the defense of qualified immunity in a Rule 7(a) reply and allege sufficient and plausible facts that would show that Defendants' actions were clearly unreasonable, despite the existence of the search incident to arrest and knock and talk doctrines.

### 5.  Supervisory Liability of Police Chief John Tollett

In his complaint, Olvera alleges Police Chief John Tollett violated his federal constitutional rights and committed state law torts.  Defendants seek dismissal of all claims against Defendant Tollett, arguing that Olvera's complaint has failed to identify any personal involvement by Defendant Tollett in the facts giving rise to this complaint. Olvera responds that Defendant Tollett sanctioned his arrest by allowing the detention and prosecution of Olvera to go forward, and thereby implicitly acknowledging that the City of Sealy had a policy of arresting individuals for taking photographs of police officers.

Under Section 1983, supervisory officials are not liable for the actions of subordinates on a theory of vicarious liability.  *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987).  Instead, the "misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor." *Southard v. Tex. Bd. Of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997) (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th cir. 1994) (en banc)).  Supervisory liability may attach only if a supervisory official affirmatively participates in an act that violates the constitution, or implements an unconstitutional policy that causes the plaintiff's injury. *Baker v. Putnal*, 75 F.3d

190, 199 (5th Cir. 1996) (citing *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992)). In other words, supervisory liability may exist "even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985), *cert. denied*, 480 U.S. 916 (1987)).

In this case, Olvera does not allege that Defendant Tollett was personally involved in his arrest. Instead, he states in his Response to Defendants' Motion to Dismiss, that he has sued Defendant Tollett under the theory that Tollett oversaw a policy that allowed police officers in the City of Sealy to arrest individuals for taking photographs of police officers, and that such a policy, based on an erroneous understanding of the law, is unconstitutional. However, Olvera's complaint does not contain any mention of this theory, nor any facts that would support a claim against Defendant Tollett based upon this theory. Because this case is now at the motion to dismiss phase, the Court acknowledges that providing proof of an unconstitutional policy or Defendant Tollett's actions that led to the violation of Olvera's constitutional rights is exceedingly difficult for a plaintiff, who has no source of pre-discovery evidence that he may produce to support such a claim. However, Olvera must set forth at least *some* facts that allege the existence of policy, how such a policy is unconstitutional, and how Defendant Tollett implemented such a policy. This Olvera has not done. The Court allows Olvera leave to amend his complaint to address this deficiency.

### 6.  Municipal Liability of the City of Sealy

Defendants argue next that Olvera fail to allege facts which support a claim against the City of Sealy.  A local government may be sued under Section 1983 "'if it is alleged to have

caused a constitutional tort through a policy statement, ordinance, regulations, or decision officially adopted and promulgated by that body's officers." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). Municipal liability may also attach where the constitutional violation occurs pursuant to a governmental custom that has not received formal approval. *Id.* (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). To establish municipal liability, a plaintiff must prove three elements: a policymaker, an official policy, and a violation of constitutional rights whose moving force is the policy or custom. *Id.* (quotations omitted).

A policy may arise in many forms. A plaintiff may "prove the existence of a municipal policy through, *inter alia*, the actions of the municipality's legislative body or an individual with final decisionmaking authority." *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 483-84 (1986)). A policy may also be established by showing a "'persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Id.* (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc)).

Next, a plaintiff must show that the policy "'results from the decision or acquiescence of the municipal officer or body with final policy making authority over the subject matter of the offending policy.'" *Peterson*, 588 F.3d at 847 (internal quotations omitted). Thus, a plaintiff must show that the policy was promulgated by the municipality's policymaker. There is no "'de facto' final policymaking authority." *Id.* (citations omitted).

Finally, a plaintiff must show that the policy was the moving force behind the relevant violation of constitutional rights. "In other words, a plaintiff must show direct causation," *id.* at

848 (citations omitted), meaning "'there must be a direct causal link' between the policy and the violation." *Id.* (quoting *Piotrowski*, 237 F.3d at 580).

Olvera has not adequately pled the elements establishing a municipal policy or causation in his complaint. In his Response to Defendants' Motion to Dismiss, Olvera states that he believes that the City of Sealy has a policy that sanctioned Defendant Alderete's unlawful conduct—i.e., the arrest of Olvera based on the mistaken assumption that taking a photograph of a police officer was illegal. However, Olvera must specify, in his complaint, the policy that led to the deprivation of his constitutional rights and how the policy caused the violation of his constitutional rights. With respect to the policy, Olvera must either plead facts supporting the existence of an official policy promulgated by the municipality or a "custom or policy" in the form of "'persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Id.* (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)). If the policy that Olvera identifies in his complaint is facially constitutional, Olvera must show that the policy was "promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Bd. of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407 (1997)).

With respect to the policymaker, Olvera alleges in his complaint that John Tollett, as Police Chief for the City of Sealy, created the police department's policies that led to Olvera's arrest. (Complt. ¶ 25.) Olvera has alleged sufficient facts regarding Defendant Tollett's position within the police department to state a claim that Defendant Tollett possessed "final policy making authority" over the policy of arresting individuals for taking photographs of police

officers. The Court allows Olvera leave to amend his complaint to state a claim against the City of Sealy.

### B. State Law Claims

Finally, the Defendants move to dismiss Olvera's state law claims against the individual defendants, Alderete and Tollett, as well as the state law claims against the City of Sealy. The Court will address each argument in turn.

### 1. State Law Claims Against Individual Defendants Alderete and Tollett

Defendants argue that Olvera's claims against Defendants Alderete and Tollett are barred by the Texas Tort Claims Act ("TTCA"). Tex. Civ. Prac. & Rem. Code § 101.001 *et seq.* Specifically, Defendants point to § 101.106(e), which states: "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." Tex. Civ. Prac. & Rem. Code § 101.106(e). Therefore, Defendants argue, the Court must dismiss Olvera's claims against Defendants Alderete and Tollett because Olvera has also sued the City of Sealy and § 101.106(e) bars Olvera from proceeding on his claims against both governmental employees and the governmental unit itself.

Defendants are correct. In *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008), the Texas Supreme Court confirmed that the reach of § 101.106(e) extended to include intentional torts that are not otherwise covered by the TTCA.[5] The Court notes that Olvera has alleged that the individual Defendants Alderete and Tollett, employees of the City of

---

[5] Prior to *Garcia*, the Fifth Circuit had interpreted the TTCA and held that § 101.106(e) did not apply to intentional torts. *See* Tex. Civ. Prac. & Rem. Code § 101.057(2) (excluding from the entire chapter claims "arising out of assault, battery, false imprisonment, or any other intentional tort"); *Meadours v. Ermel*, 483 F.3d 417, 424 (5th Cir. 2007). However, after *Garcia*, the Fifth Circuit revisited the its holding in *Meadours*, explicitly disavowed it, and held that "the election of remedies provisions in § 101.106 appl[ies] to state law intentional tort claims against a governmental unit and its employees." *Bustos v. Martini Club*, 599 F.3d 458, 463 (5th Cir. 2010).

Sealy, committed the following intentional torts: trespass, assault and battery, false imprisonment, and malicious prosecution. (Complt. ¶ 26.) Olvera has alleged that the Defendant City of Sealy, committed the same intentional torts. (*Id.*) The City of Sealy has moved to dismiss the individual Defendants Alderete and Tollett. Therefore, under the statutory provision of § 101.106(e) and relevant Texas and Fifth Circuit precedent, the Court must dismiss the state law claims against Defendants Alderete and Tollett.

### 2.  State Law Claims Against City of Sealy

Defendants argue that Olvera's claims against the City of Sealy also are barred by the TTCA. Section 101.021 provides a limited waiver to absolute governmental immunity from tort claims in three areas: use of publicly-owned vehicles, premises defects, and injuries arising from conditions or use of property. *Brown v. Montgomery Cnty. Hosp. Dist.*, 905 S.W. 2d 481, 483 (Tex. App.—Beaumont 1995). Further, section 101.057 specifically excludes the possibility of a waiver of governmental immunity in suits brought for intention torts committed by government employees. Tex. Civ. Prac. & Rem. Code § 101.057(2); *Ganther v. Ingle*, 75 F.3d 207, 210 (5th Cir. 1996). The Court notes that Olvera has alleged that the City of Sealy, along with the other Defendants, committed the following intentional torts: trespass, assault and battery, false imprisonment, and malicious prosecution. (Complt. ¶ 26.)  The City cannot be liable for damages unless these torts are not intentional <u>and</u> fall under a statutory waiver of immunity.  The Court concludes that Olvera has failed to indicate, in his complaint, how the City has waived its immunity under any of the three waiver categories, and how these torts are unintentional. Olver must replead this claim to allege sufficient facts that establish a waiver of governmental immunity under the TTCA and specify how the claims are not barred by § 101.057, or drop these claims against the City.

## IV.    CONCLUSION

For the reasons stated in this order, Defendant's Motion to Dismiss (Doc. No. 5) is **GRANTED IN PART** and **DENIED IN PART WITHOUT PREJUDICE**. Olvera's state law claims against Defendants Alderete and Tollett are **DISMISSED**. Olvera must amend his pleadings to state a claim for relief under Rule 12(b)(6), and additionally must file a Rule 7(a) reply tailored to the Individual Defendants' qualified immunity defense. Olvera is ordered to file his amended complaint that cures the deficiencies identified here and his Rule 7(a) reply within twenty (20) days from the date of this Order. He must make all of the changes outlined above. Plaintiff may amend his pleadings in one document and file a Rule 7(a) reply in another, or he may do both in one document. If the Court satisfies itself that Olvera has stated a claim against Defendants and adequately addressed the defense of qualified immunity, it may then order limited discovery on the qualified and sovereign immunity claims. If Olvera fails to cure the defects in his pleadings, the Court will dismiss the case.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 1st day of December, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE